1  VICTOR DE GYARFAS, CA Bar No. 171950
     vdegyarfas@foley.com
2  JIANING G. YU, CA Bar No. 297098
     jyu@foley.com
3  MIKLE S. JEW, CA Bar No. 316372
     mjew@foley.com
4  ASHLEY M. KOLEY, CA Bar No. 334723
     akoley@foley.com
5  **FOLEY & LARDNER LLP**
   555 SOUTH FLOWER STREET, SUITE 3300
6  LOS ANGELES, CA 90071-2418
   TELEPHONE: 213-972-4500
7  FACSIMILE:   213-486-0065

8  Attorneys for Plaintiff CLEAN SAFETY, INC.

9

10                  **UNITED STATES DISTRICT COURT**

11                  **CENTRAL DISTRICT OF CALIFORNIA**

12

| | |
|---|---|
| 13  CLEAN SAFETY, INC., a California corporation, | Case No. 5:21-cv-00225-JWH-SPx |
| 14 | |
| 15                              Plaintiff, | **PLAINTIFF CLEAN SAFETY, INC.'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AGAINST RUBY TRUCKING, LLC, AND LEI JIANG** |
| 16      vs. | |
| 17  RUBY TRUCKING LLC, a California limited liability company, and LEI JIANG, an individual, | Honorable John W. Holcomb |
| 18 | |
| 19                              Defendants. | Date:        January 13, 2023 |
| 20 | Time:       9:00 AM |
| 21 | Courtroom: 9D, Santa Ana |

22

23

24

25

26

27

28

4879-8324-6908.5

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 13, 2023 at 9:00 AM, or as soon thereafter as the matter may be heard before Honorable John W. Holcomb, in Courtroom 9D of the United States District Court, Central District of California, located at the Ronald Reagan Federal Building and U.S. Courthouse, 411 W. 4th Street, Santa Ana, California 92701-4516, Plaintiff Clean Safety, Inc. ("Clean Safety") will, and hereby does, respectfully move this Court to enter Default Judgment with respect to the claims asserted in Clean Safety's First Amended Complaint. Clean Safety further seeks a permanent injunction against Defendants, and a monetary recovery, as detailed herein.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the accompanying Declarations, the pleadings and papers on file in this action, and on such other and further evidence as may properly be before this Court at the hearing on the Motion.

DATED:  December 14, 2022          **FOLEY & LARDNER LLP**
Victor de Gyarfas
Jianing G. Yu
Mikle S. Jew
Ashley M. Koley


/s/ Victor de Gyarfas
Victor de Gyarfas
**Attorneys for Plaintiff CLEAN SAFETY, INC.**

# CONTENTS

I.     INTRODUCTION ............................................................................. 1

II.    BACKGROUND AND ADMITTED FACTUAL ALLEGATIONS ................... 2

       A.    The Now-Admitted Factual Background ................................. 2

       B.    Defendants' Willful Refusal To Participate In Litigation Has Caused
             Clean Safety To Incur Substantial Fees ................................. 3

       C.    Additional Factual Background Developed in Discovery ........... 6

III.   DEFAULT JUDGMENT IS WARRANTED ............................................ 8

       A.    Defendants' Liability On Default ........................................... 8

       B.    The First Eitel Factor Weighs in Favor of Entering Default Judgment
             Against Defendant ............................................................. 9

       C.    The Second and Third Factors weigh in Favor of Granting Default
             Judgment ........................................................................ 10

       D.    The Fourth Eitel Factor Weighs in Favor of Granting Plaintiff's
             Motion for Default Judgment .............................................. 13

       E.    The Fifth Eitel Factor Favors Default Judgment .................... 15

       F.    The Sixth Eitel Factor Favors Default Judgment ................... 16

       G.    The Seventh Eitel Factor Favors Default Judgment .............. 16

V.     The Remedies Sought ............................................................... 17

       A.    Monetary Relief Is Highly Warranted .................................. 17

             1.    Defendants' Profits ................................................ 17

             2.    Attorneys' Fees ..................................................... 18

             3.    Costs .................................................................... 21

       B.    Injunctive Relief ............................................................... 21

VI.    Conclusion ............................................................................... 23

## I.    __INTRODUCTION__

Plaintiff, Clean Safety, Inc. ("Clean Safety") hereby respectfully requests that the Court enter default judgment against defendants, Ruby Trucking, LLC ("Ruby Trucking") and Lei Jiang ("Jiang," together with Ruby Trucking, "Defendants"). By virtue of their refusal to participate in this litigation – including contempt of the Court's orders – Defendants have defaulted, and thus admitted to the allegations of the Complaint, which Clean Safety has independently corroborated based on its own diligent investigation and discovery from non-parties. Defendants are counterfeiters who took advantage of the unprecedented public health crisis of the pandemic to profit from sales of fake personal protective medical equipment ("PPE"). After being sued, they refused to cooperate in discovery, misrepresented their involvement in the accused conduct, shirked the court-ordered mediation process, and then ultimately ceased litigating, in defiance of the Federal Rules of Civil Procedure, and in contempt of this Court's orders.

It is clear under the applicable *Eitel* factors that default judgment should be entered, just as it is equally apparent that an injunction against further acts of counterfeiting should issue. Ultimately, the primary question to be resolved by this Motion is the amount of monetary recovery that the Court should order.

Pursuant to 15 U.S.C. § 1117(c)(2), the Court would be justified in awarding up to *$2 million* in statutory damages for counterfeiting. But short of that, Section 1117(b)(1) provides that the court shall minimally award treble damages, plus attorneys' fees. Here, although Defendants refused to provide discovery concerning their infringing sales, Clean Safety has independently been able to confirm at least $57,400 in infringing revenue, three times which is $172,200. Clean Safety has also incurred roughly $265,000 in attorneys' fees litigating this case. Beyond being entitled to such an award by statute, this case also independently qualifies as exceptional under the *Octane Fitness,* further justifying an award of fees. Such fees are also warranted under Rule 37, and the Court's inherent powers. If the Court agrees with the categories of relief sought in this Motion, Clean Safety will provide a Declaration as to the amount of fees.

## II.     BACKGROUND AND ADMITTED FACTUAL ALLEGATIONS

### A.     The Now-Admitted Factual Background

A default is an admission of all well-pleaded allegations in Clean Safety's FAC. *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) ("the general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true"); *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 107 (2nd Cir. 2006) (same).

Clean Safety imports and sells authentic Clean Safety-branded Blue Nitrile Gloves that are frequently used in circumstances where personal protective equipment ("PPE") is required.  (First Amended Complaint ("FAC"), ¶9) (Doc. 23.)  Clean Safety's Blue Nitrile Gloves have developed a reputation for being desirable, high quality, patient examination gloves.  (*Id.*)  Clean Safety is the owner of U.S. federal trademark Reg. No. 4,459,128 for the CLEAN SAFETY mark, which rights are valid and enforceable.  (*Id.* ¶ 19.)

Defendants have marketed and distributed in interstate commerce a counterfeit version of Clean Safety's packaging for Blue Nitrile Gloves, bearing the CLEAN SAFETY mark ("Counterfeit Gloves"). (*Id.* ¶ 10-13.) Defendants are intentionally attempting to, and succeeding in deceiving and creating a false impression among a substantial segment of potential consumers that the Counterfeit Gloves are authentic Clean Safety Blue Nitrile patient examination gloves sponsored or approved by Plaintiff.  (FAC ¶ 12.) Defendants' deception is material in that it is likely to influence consumers' purchasing decisions because a substantial segment of potential consumers want to buy Plaintiff's approved patient examination gloves. (*Id.* ¶ 14.) Because Defendants' Counterfeit Gloves are not actually authentic Clean Safety Blue Nitrile Gloves, consumers have been injured when they purchased unauthorized patient examination gloves. (*Id.*) Defendant's conduct constitutes counterfeiting and infringement under 15 U.S.C. §§ 1114 and 1125(a), as well as Unfair Competition under California Business and Professions Code § 17200. (FAC ¶¶ 22-23, 29, 33.)

As part of Defendants' scheme to profit from the sale of counterfeit products, Jiang

has offered for sale the Counterfeit Gloves on social media and has listed an address of Ruby Trucking as the location where the Counterfeit Gloves can be purchased. (*Id.* ¶ 13.) Jiang's Linkedin profile identifies him as a "Manager at Ruby Truck Line Inc." (*Id.*; Koley Decl. ¶ 2, Ex. A.)

Before filing this lawsuit, Clean Safety had sent Defendants a cease and desist letter on January 16, 2021, but Defendants did not respond to that letter, nor did they stop the advertisement and sale of Counterfeit Gloves. (FAC ¶ 16.) Defendants had both actual and constructive knowledge of Plaintiff's ownership of and rights in the CLEAN SAFETY mark prior to Defendants' infringing use of that mark. (*Id.* ¶ 21). As a result of Defendant's intentionally deceptive acts, Clean Safety has been or is likely to be competitively injured as a result of Defendants' sales and advertisements in that Clean Safety's ability to compete with Defendants will be harmed and Clean Safety will suffer a loss of goodwill. (*Id.* ¶ 17.) Defendants' actions constitute knowing, deliberate, and willful infringement of Plaintiff's CLEAN SAFETY mark, rendering this an exceptional case under 15 U.S.C. § 1117(a). (*Id.* ¶ 25). As a result of Defendants' intentionally deceptive acts, Plaintiff has been or is likely to be competitively injured as a result of Defendants' sales and advertising in that Plaintiff's ability to compete with Defendants will be harmed and Plaintiff will suffer a loss of goodwill. (*Id.* ¶ 17.)

**B.    Defendants' Willful Refusal To Participate In Litigation Has Caused Clean Safety To Incur Substantial Fees**

Unlike many default judgment cases, the Defendants in this case did appear (late, and begrudgingly), but then ultimately disregarded their obligations as litigants, and refused to participate in discovery, even after being ordered by the Court to do so. Defendants have also made repeated material misrepresentations (including in sworn discovery responses), claiming to not be involved in the accused conduct, when objective evidence confirms that they are. (*compare* Koley Decl. ¶¶ 11-12, Exs. C-D with Koley Decl. ¶¶ 2, 13, 14, Exs. A, E, F.) Even when Jiang at one point indicated that he would settle and pay after the court-ordered mediation, this turned out to be a ruse, with Jiang

1    ultimately refusing to respond to communications thereafter. (Koley Decl. ¶ 4; Docs. 105,
2    106.)  In all, Clean Safety has now incurred approximately $265,000 in attorneys' fees in
3    this case trying to litigate against opponents who refuse to participate, who in bad faith
4    wasted the time of Clean Safety's attorneys and a mediator, and who have ignored the
5    authority of this Court. (*Id*. ¶ 18.) Below is a summary of Defendant's misconduct.

6        On March 15, 2021, Ruby Trucking failed to timely file an answer within 21 days
7    after service of the Complaint and on March 17, 2022, Clean Safety moved for an entry of
8    default against Ruby Trucking.  (Doc. 13.)

9        On June 11, 2021, Clean Safety moved to strike all eight of Ruby Trucking's
10   affirmative defenses that were insufficiently pleaded or did not constitute affirmative
11   defenses.  (Doc. 39.)  Ruby Trucking opposed the motion to strike.  (Doc. 42.)  The Court
12   granted Clean Safety's motion and struck seven out of Ruby Trucking's eight affirmative
13   defenses (Doc. 50.)

14       On August 30, 2021, Clean Safety filed a motion to compel answers to
15   interrogatories against Ruby Trucking.  (Doc. 52.)  On September 14, 2021, the Court
16   granted in part and denied in part Clean Safety's motion.  (Doc. 55.)

17       Due to Jiang's refusal to cooperate in the discovery process, Clean Safety incurred
18   considerable time and expenses attempting to obtain responses and supplemental responses
19   to its first set of discovery requests from Jiang.  (See Doc. 56 at 1-2.) (summarizing nearly
20   six months of attempts to obtain responses).  Clean Safety ultimately filed a motion to
21   compel supplemental responses to interrogatories and requests for production against
22   Jiang.  (Doc. 56.)  The Court granted in part and denied in part Clean Safety's motion,
23   cautioning Jiang that if he "fails without good reason to supplement when the matter is
24   called to his attention, he could be subject to sanctions."  (Doc. 59 at 6.)

25       On March 1, 2022, Clean Safety filed a second motion to compel supplemental
26   responses and production of documents against Jiang.  The Court granted Clean Safety's
27   second motion in its entirety and sanctioned defendant by awarding Clean Safety $6,005
28   in attorneys' fees.  (Docs. 68; 88.)  However, as of today's date, Jiang has not paid the

-4-

1   Court ordered attorneys' fees to Clean Safety.  (Koley Decl. ¶ 3.)

2       Furthermore, on May 25, 2022, Plaintiff attended a court-ordered mediation with

3   Jiang, Jiang's then-counsel, and Ruby Trucking's counsel.  (Doc.76.)   Ruby Trucking

4   failed to appear to the Court ordered-mediation as required.  (*Id*.)  At that mediation, Jiang

5   signed proposed terms of a settlement agreement, agreeing to pay Clean Safety to resolve

6   the dispute. (Koley Decl. ¶ 4; Docs. 105, 106.)   Clean Safety then drafted a long-form

7   settlement agreement, which it would not have drafted if it knew Jiang was about to choose

8   to stop communicating with his counsel or Clean Safety.  (Koley Decl. ¶ 5.)  Clean Safety

9   corresponded and conferred with Jiang's counsel for weeks before Jiang's counsel stated

10  that he would be withdrawing as counsel due to a complete communication breakdown

11  with Jiang.  (*Id*. ¶ 6.)

12      Further, for weeks after the May 25, 2022, mediation, Clean Safety corresponded

13  with Ruby Trucking's then-counsel, who stated that Jiang had revealed the confidential

14  proposed settlement terms between Clean Safety and Jiang.  (Koley Decl. ¶ 7.)  Ruby

15  Trucking then attempted to use such confidential settlement terms as leverage to settle the

16  dispute with Ruby Trucking.  (*Id*.)  Clean Safety incurred attorneys' fees exploring its

17  options against Jiang for breach of the confidentiality clause of the signed proposed

18  settlement term sheet.  (*Id*. ¶ 8.)

19      Shortly thereafter, Ruby Trucking ceased all communications with its attorney as

20  well. (Koley Decl. ¶ 9.)  In June of 2022, both Jiang and Ruby Trucking's counsel withdrew

21  from this case.  (Doc. 79; Doc. 81.)  The Court ordered Jiang to enter an appearance by

22  August 12, 2022, but he failed to do so.  (Doc. 99; Doc. 110).  The Court similarly ordered

23  Ruby Trucking to obtain new counsel to enter an appearance by September 16, 2022, but

24  it also failed to do so.  (Doc. 110; Doc. 116.)  Accordingly, the Court struck both of

25  Defendants' answers.  (Doc. 110 (Jiang); Doc. 116 (Ruby Trucking).)  In view of the

26  foregoing, Clean Safety asked the Clerk to formally enter a default against Jiang, which

27  the clerk did on September 14. (Doc. 114.)  Plaintiff also asked the clerk to formally enter

28  default against Ruby Trucking, which the clerk did on October 11, 2022.  (Doc. 119.)

In contrast to Defendants' misconduct, Clean Safety has been doing everything a diligent plaintiff should do: respecting the Court's schedule and time, taking advantage of mediation, pursuing requests for production and interrogatories, subpoenaing non-party witnesses, and conducting its own thorough and time-consuming investigation of the facts both before and after the Complaint was filed. Among other things, Clean Safety attorneys' fees in this case also include preparing the entry of default against both Defendants, drafting a motion to strike Ruby Trucking's answer after Ruby Trucking failed to obtain new counsel in violation of the Court's order, attending multiple hearings on these issues (one of which Ruby Trucking's counsel failed to appear without notice), and drafting this motion for default judgment.  As discussed further in Sections II.B, *supra*, and V.A.2, *infra*, Clean Safety respectfully asks that the Court include an award of all of Clean Safety's attorneys' fees and costs as part of the order on default judgment.

### C.    <u>Additional Factual Background Developed in Discovery</u>

Notwithstanding Defendants' refusal to participate in discovery, Clean Safety was able to obtain a limited amount of discovery from non-parties that Clean Safety had subpoenaed, and otherwise diligently gathered additional evidence based on its own investigations.

Discovery has shown that Jiang is the brother of Ruby Trucking's owner, Bin Jiang. (Koley Decl. ¶ 10, Ex. B.)  Both Jiang brothers insisted that they were not involved in selling PPE, much less counterfeit gloves.  (Koley Decl. ¶¶ 11-12, Exs. C, D (Jiang and Ruby Trucking Interrogatory Responses).  Both Defendants' interrogatory responses were verified. (*See id*. ¶¶ 11-12, Exs C,D.)  Despite Jiang's representations that he was not involved in selling personal protective equipment, his own LinkedIn page clearly shows that he marketed himself as a supplier. (Koley Decl., ¶ 2, Ex. A.) Other records confirm Jiang coordinating operations with his brother at Ruby Trucking, including Jiang's LinkedIn profile identifying him as a manager at Ruby Trucking, and counterfeit glove sale transaction records identifying Ruby Trucking. (Koley Decl., ¶¶2,13,14, Exs. A,E,F.)

Clean Safety obtained evidence of at least two sales of Counterfeit Gloves made by

Defendants from two non-parties in the course of this litigation, though Clean Safety expects that Defendants made many more sales than these. Specifically, on December 3, 2020, Defendants sold 450 boxes of Counterfeit Gloves to Thigo International at $12.00 per box, for a total of $5,400. (Declaration of Thigo International ("Decl. Thigo") ¶ 4.) Additionally, Jiang sold at least 4,000 boxes of Counterfeit Gloves to SY America Group at $12.50 per box, for a total of $52,000.[1] (Koley Decl. ¶ 17.) The foregoing sales of which Clean Safety has knowledge total $57,400.

Clean Safety inspected Thigo and SY America's gloves which were purchased from Defendants and confirmed that they were low-quality counterfeits. (Koley Decl. ¶ 15.) Below are pictures comparing the counterfeit and genuine gloves, as described in the Complaint. (*Id*. ¶ 19.)




---

[1] Clean Safety separately sued SY America in C.D. Cal. Case No. 5:21-cv-00223-JGB-KK, and the parties were discussing a settlement. SY America had agreed to supply a formal declaration attesting to the facts herein, which Clean Safety had been waiting to receive before filing this Motion. In view of the Court's Order to Show Cause (Dkt. 121), Clean Safety is proceeding with the Motion without the Declaration, though still hopes to obtain it from SY America to supplement the record. Clean Safety respectfully suggests that there is sufficient evidentiary certainty on the record already to accept the $52,000 figure from SY America, particularly in view of all the other of Defendants' sales that Clean Safety was unable to discover due to Defendants' refusal to participate in discovery. However, should the Court deem it important, Clean Safety seeks leave to try once more to obtain the formal declaration from SY America to supplement this Motion.

Due to Ruby Trucking and Jiang's failure to produce any documents in their possession, custody, or control, concerning any sales of PPE, or any costs associated with sales of PPE, Plaintiff was unable to collect any more information concerning other transactions other than what it independently obtained. Defendants also produced no evidence in this case relating to any costs or expenses associated with the marketing and sale of the Counterfeit Gloves, and thus are liable for all ill-gotten revenue they received.  (Koley Decl. ¶ 16.)



## III.    DEFAULT JUDGMENT IS WARRANTED

A district court has discretion in deciding whether to enter a default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In exercising this discretion, courts consider the "*Eitel* factors": (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and, (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In deciding a motion for default judgment, all factual allegations in the plaintiff's complaint are deemed to be true, except those relating to the amount of damages.  *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987); *see also DirecTV, Inc. v. Huynh*, 503 F.3d 847, 854 (9th Cir. 2007).

### A.    Defendants' Liability On Default

Defendants are liable as follows under the allegations of the well-pleaded complaint:

- Under Count 1 for Registered Trademark Infringement in Violation of 15

-8-

4879-8324-6908.5

U.S.C. § 1114(1) for advertising, promoting, and selling counterfeit Blue Nitrile Gloves under the CLEAN SAFETY mark.  By these acts, Defendants have irreparably injured Clean Safety and caused Clean Safety to suffer a substantial loss of goodwill and reputation, and such injury will continue unless they are enjoined by this Court.  (FAC ¶¶ 17, 26.)

- Under Count 2 for Federal Unfair Competition in Violation of 15 U.S.C. § 1125(a), for  advertising, promoting, and selling counterfeit Blue Nitrile Gloves under the CLEAN SAFETY mark, did cause consumer deception as to the affiliation, connection, or association of the Counterfeit Gloves with Clean Safety.  (FAC ¶ 9-15.);

- Under Count 3 for Unfair Competition in Violation of California Business and Professions Code § 17200, for advertising, promoting, and selling Blue Nitrile Gloves under the CLEAN SAFETY mark, which was likely to cause and did cause confusion, mistake, or deception as to the affiliation, connection, or association of the Counterfeit Gloves with Clean Safety.  (FAC ¶ 32-36.)

## B.  **The First Eitel Factor Weighs in Favor of Entering Default Judgment Against Defendant**

Under the first *Eitel* factor, the Court considers whether withholding default judgment would prejudice Plaintiff.  Specifically, the Court considers whether Plaintiff "will most likely be without recourse against [Defendant], given [Defendant's] unwillingness to cooperate and defend." *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1006 (C.D. Cal. 2014); *Coach Servs. v. YNM, Inc*., No. 2:10-CV-02326-JST, 2011 U.S. Dist. LEXIS 52482, *6 (C.D. Cal. May 6, 2011).

Here, Defendants have infringed on Plaintiff's registered trademark, deceiving Plaintiff's potential customers and causing competitive harm.  Clean Safety will not have any recourse against Defendants without a default judgment because:

(1) Defendant, Jiang, has already abandoned the proposed settlement terms that he signed; and

(2) Both Defendants have

(i) refused to communicate with their counsel causing each of their counsel to withdraw;

(ii) refused to enter an appearance in this case; and

(iii) refused to acknowledge their involvement in this case.

Thus, Clean Safety will be prejudiced without a default judgment. *Carbon Chemistry v. Banoun*, No. SA CV 20-11031-DOC-(SKx), 2021 U.S. Dist. LEXIS 190359, at *7-8 (C.D. Cal. July 29, 2021) (granting plaintiff's motion for default judgment where plaintiff had no other remedy other than default judgment).

## C.    The Second and Third Factors weigh in Favor of Granting Default Judgment

The second and third Eitel factors require the Court to determine whether the plaintiff's substantive claims have merit and whether Plaintiff's Complaint sufficiently sets forth a claim for relief. *Eitel*, 782 F.2d at 1471. "The Ninth Circuit has suggested that these two factors require that a plaintiff 'state a claim on which the [plaintiff] may recover.'" *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

Here, Clean Safety has adequately pleaded three meritorious claims: (1) Trademark Infringement in Violation of 15 U.S.C. § 1141(1); (2) Federal Unfair Competition in Violation of 15 U.S.C § 1125(a); and (3) Unfair Competition in Violation of California Business and Professions Code § 17200, thereby entitling Clean Safety to relief in light of Defendants' defaults.

### 1.    Clean Safety's Federal Trademark Infringement Claim is Meritorious

To state a claim for federal Trademark Infringement claim, a plaintiff must allege that, without its consent, Defendant used in commerce a reproduction or copy of a registered trademark in connection with the sale or advertising of any goods or services, and that such use is likely to cause confusion, mistake, or deceive customers." *Carbon*

-10-

*Chemistry*, 2021 U.S. Dist. LEXIS 190359, at *8-9 (citing 15 U.S.C. § 1141(1)).

First, Clean Safety has valid and enforceable registered trademark rights in the CLEAN SAFETY mark. (FAC ¶ 19.) "[R]egistration of a trademark with the United States Patent and Trademark Office satisfies the threshold requirement that the plaintiff must possess a protectable mark." *Kerr Corp. v. Tri Dental, Inc*., No. SACV 12-0891 DOC CWX, 2013 WL 990532, at *3 (C.D. Cal. Mar. 11, 2013) (internal quotations marks and citations omitted).

Second, Defendants used the CLEAN SAFETY mark in commerce when it marketed and sold the Counterfeit Gloves. (FAC ¶¶ 10-13.) *See Rolex Watch U.S.A., Inc. v. LSM Watch, Inc.*, No. CV 21-1612 PSG (SKx), 2022 U.S. Dist. LEXIS 151179, at *8 (C.D. Cal. June 7, 2022) (finding second and third Eitel factors weighed in favor of granting default judgment for trademark infringement where plaintiff described Defendants' unauthorized use of plaintiff's marks and sale of "indistinguishable" counterfeit copies).

Third, Clean Safety has pleaded facts that necessitate a finding of likely confusion under the *Sleekcraft* factors. (FAC ¶¶ 9-15.) For example, the CLEAN SAFETY mark is a strong mark as evidenced by its registration and the extensive use in PPE industry by Plaintiff. The proximity of the goods offered and sold by Defendants (disposable gloves used for PPE) are directly competitive and identical to the goods offered by Clean Safety. (*Id*. ¶ 9-12.) Defendants' Counterfeit Gloves bear an identical mark to Clean Safety's CLEAN SAFETY mark. (*Id*.) The marketing channels and consumer base are virtually the same between Clean Safety and Defendants. Finally, given the notoriety of the CLEAN SAFETY mark, the proximity of the goods offered, and the actual notice provided to Defendants, the inescapable conclusion is that Defendants' intent was to deceive its customers into thinking they were buying authentic Clean Safety Blue Nitrile Gloves. (*Id*. ¶ 15) or to cause confusion and mistake as to the affiliation, connection, or association with Clean Safety. (*Id*. ¶ 24). The Court should find that Defendants' use of the CLEAN SAFETY mark is likely to cause confusion, mistake, or deception for purposes of this

-11-

analysis.  *See Philip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004) ("[C]ounterfeit marks are inherently confusing.").

### 2. Clean Safety's Federal Unfair Competition Claim is Meritorious

To state a claim for federal unfair competition, Plaintiff must plead that Defendant used in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of his goods by Plaintiff.  *Carbon Chemistry v. Banoun*, No. SA CV 20-11031-DOC-(SKx), 2021 U.S. Dist. LEXIS 190359, at *9 (C.D. Cal. July 29, 2021) (citing 15 U.S.C. § 1125(a)).

Clean Safety adequately pleaded a meritorious claim for federal unfair competition under 15 U.S.C. § 1125(a).  Clean Safety pleaded that Defendants marketed and sold counterfeit gloves bearing an identical CLEAN SAFETY name on the packaging (FAC ¶¶ 9-13) and that such use was likely to cause and did cause confusion, mistake, and deception as the affiliation, connection, or association of Defendants' Counterfeit Gloves as to the origin, sponsorship, or approval of their goods by Plaintiff.  (*Id.* ¶¶ 15, 24.)  Plaintiff provided photographs comparing Defendants' Counterfeit Glove packaging with Plaintiff's authentic Blue Nitrile Glove packaging, evidencing the identical marks.  (*Id.* ¶¶ 9-11.)  Such facts are sufficient to state a meritorious claim for federal unfair competition and weigh in favor of granting default judgment for purposes of this analysis.  *See Carbon Chemistry*, 2021 U.S. Dist. LEXIS 190359, at *10 (C.D. Cal. July 29, 2021) (granting default judgment for unfair competition where plaintiff pleaded similar facts in complaint).

### 3. Clean Safety's State Law Claim for Unfair Competition is Meritorious

To state a claim for unfair competition under California Business and Professions Code § 17200, Plaintiff must prove that Defendant engaged in "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

-12-

Cal. Bus. & Prof. Code § 17200.

Clean Safety has set forth a meritorious claim for unfair competition under California Business and Professions Code § 17200.  The FAC sets forth the identity of Clean Safety's registered CLEAN SAFETY mark, the extent to which Clean Safety used its mark, and the notoriety of the mark within the relevant consumer and trade markets— personal protective equipment ("PPE") where PPE is required, specifically nitrile gloves. (FAC, ¶¶ 9, 19, 20.)  The FAC also specifically alleges that Defendants had distributed in interstate commerce a counterfeit version of gloves bearing a reproduction of Clean Safety's registered CLEAN SAFETY mark, and includes photographs of both Clean Safety's authentic packaging bearing the registered CLEAN SAFETY mark and Defendant's counterfeit packaging bearing Clean Safety's registered CLEAN SAFETY mark.  (*Id*. ¶¶ 9-11, 22-24.)  The FAC further alleged how Defendants marketed and sold the counterfeit gloves bearing the CLEAN SAFETY mark online and that consumers were deceived into thinking that Defendants' products were sponsored or approved by Plaintiff. (*Id*. ¶¶12-15, 29.)  Courts have held that such allegations in the complaint are sufficient to cause the second and third Eitel factors for these three causes of action to weigh in favor of the Plaintiff on a motion for default judgment.  *See Carbon Chemistry*, 2021 U.S. Dist. LEXIS 190359, at *8-11.

### D. <u>The Fourth Eitel Factor Weighs in Favor of Granting Plaintiff's Motion for Default Judgment</u>

"Under the [fourth] Eitel factor, the court must consider the amount of money at stake in relation to the seriousness of [the] [d]efendant's conduct." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002); *Landstar Ranger, Inc. v. Parth Enters.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010).

As a threshold matter, the Court is empowered in its discretion to award up to $2 million for willful counterfeiting in this case pursuant to 15 U.S.C. § 1117(c)(2). Short of that, Section 1117(a) of the Lanham Act permits a plaintiff to recover "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."  The

4879-8324-6908.5

statute further states that "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendants must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a).  Notably, Section 1117(b)(1) states that in cases of counterfeiting:

> "…the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever amount is greater, together with a reasonable attorney's fee…"

Attorneys' fees are also authorized under Section 1117(a) in exceptional cases.

For federal unfair competition under 15 U.S.C. 1125(a), the FAC alleged Clean Safety is entitled to "Defendants' profits and to recover its damages, its attorneys' fees, and costs, and disbursements incident to its claim of statutory unfair competition." (FAC ¶ 31.)

Under Section 17200 of the California Business and Professions Code, the FAC alleged it is entitled to "restitution and/or disgorgement of profits and other ill-gotten gains wrongfully obtained through its unfair and deceptive practices." (FAC ¶ 36.)  For all claims, the FAC also re-alleged that it sought reasonable attorneys' fees, prejudgment interest, and costs for all claims and an injunction to be, and, among other things, permanently enjoined from infringing the CLEAN SAFETY mark, selling counterfeit products bearing the CLEAN SAFETY mark, and advertising counterfeit product bearing the CLEAN SAFETY mark. (*Id*., Prayer for Relief, ¶¶ G, L.)

As discussed further in Section IV.A, a monetary award is highly warranted in this case. Short of the maximum $2 million award of statutory damages, the Court may readily award $172,200 in treble damages, and order that Clean Safety may recover all of its attorneys' fees and costs, whereupon Clean Safety will supply a more particular Declaration of the fee amounts, which are over $265,000. These amounts are highly reasonable on the facts of this case, as discussed in Section IV.A, *infra*.

In consideration of the fourth *Eitel* factor, "[w]here an alleged infringer chooses a mark he knows to be similar to another, one can infer an intent to confuse." *Century 21 Real Estate LLC v. Ed/Var Inc.,* 2014 U.S. Dist. LEXIS 94672, at *17 (quoting

-14-

4879-8324-6908.5

*Entrepreneur Media v. Smith*, 279 F.3d 1135, 1148 (9th Cir. 2002)).   Beyond the substantive evidence of sales to Thigo International and SY America Group, willful infringement has also been admitted by virtue of Defendants' failure to participate in this litigation resulting in their answers being stricken.[2]   The conduct at issue here relative to the amount sought weighs in favor of the default judgment.  *See Coach Servs. V. YNM, Inc.*, No. 2:10-CV-02326-JST, 2011 U.S. Dist. LEXIS 52482 at *9 (C.D. Cal. May 6, 2011) (citing *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1060 (N.D. Cal. 2010)) (this factor weighed in favor of default judgment even where plaintiff asserted copyright, trademark, breach of contract, and fraud claims and sought damages in the range of $1,177,827.07 to $4,900,327.07).

## E.    The Fifth Eitel Factor Favors Default Judgment

If a plaintiff has "supported its claims with ample evidence, and defendant has made no attempt to challenge the accuracy of the allegations in the complaint, no factual disputes exist that preclude the entry of default judgment." *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 922 (C.D. Cal. 2010); *see also Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists.")

Given Defendants refusal to participate in this litigation by ignoring communications from counsel, failing to enter an appearance after their counsels' withdrawals, and the Court's entry of default, there is no likelihood that any genuine issue of material fact exists. Furthermore, Defendants have had "ample opportunity to defend against them" but chose not to.  *Carbon Chemistry v. Banoun*, No. SA CV 20-11031-DOC-(SKx), 2021 U.S. Dist.

---

[2] *See Microsoft Corp. v. Wen*, 2001 U.S. Dist. LEXIS 18777, *14-17 (N.D. Cal. 2001) (default alone established willfulness based on allegations of willfulness in plaintiff's complaint); *Arista Records, Inc. v. Beker Enters.*, 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003) ("Court may infer that Defendants willfully infringed Plaintiffs' copyrights because of Defendants' default"); *Sony Music Entertainment v. Cassette Prods.*, 1996 U.S. Dist. LEXIS 21549 at *6 (D.N.J. 1996) (defendant admitted plaintiff's claim that infringements were willful by virtue of his default); *Original Appalachian v. Yuil Int'l Corp.*, 5 U.S.P.Q.2d (BNA) 1516, 1524 (S.D.N.Y. 1987) ("willfulness may be inferred from a defendant's failure to appear and defend in an action").

LEXIS 190359, at *12 (C.D. Cal. July 29, 2021).

## F.    The Sixth Eitel Factor Favors Default Judgment

"This factor favors default judgment when the defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit." *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012).

Here, Clean Safety properly served Defendants.  Defendants and filed answers, which were subsequently stricken, and minimally participated in discovery, before abandoning ship. (Doc. 110; Doc. 116.) Thus, they are aware of this action and the remedy Clean Safety seeks.  Despite being aware of this action, both Defendants chose not to participate when they ceased communications with their counsel and the clerk entered default against both of them.  (Doc. 114; Doc. 119.)  Jiang's failure to enter an appearance by August 12, 2022, does not appear to be excusable.  (Doc. 110).  Neither does Ruby Trucking's failure to obtain counsel and enter an appearance by September 16, 2022. (Doc. 116.)  Thus, this factor favors granting default judgment.  *See Carbon Chemistry*, 2021 U.S. Dist. LEXIS 190359, at *12;  *Wecosign*, 845 F. Supp. 2d at 1082.

## G.    The Seventh Eitel Factor Favors Default Judgment

"[T]he seventh Eitel factor requires the Court to consider whether the Court's strong preference for deciding cases on the merits should preclude the Court from granting default judgment."  *Carbon Chemistry*, 2021 U.S. Dist. LEXIS 190359, at *12-13 (citing *Wecosign*, 845 F. Supp. 2d at 1082).  "Despite this strong policy, courts often find that granting default judgment is appropriate when a defendant fails to adequately defend against a lawsuit."  *Id*. (citing *Wecosign*, 845 F. Supp. 2d at 1083).

Defendants chose to cease participation in this litigation and did not oppose the entry of default by the clerk.  Defendants have thus failed to adequately defend this lawsuit and this factor weighs in favor of default judgment.  *See Carbon Chemistry*, 2021 U.S. Dist. LEXIS 190359, at *12-13.

-16-

4879-8324-6908.5

## V.    THE REMEDIES SOUGHT

### A.    Monetary Relief Is Highly Warranted

A substantial monetary award is warranted in this action as compensation to Clean Safety, to vindicate the Court's authority in view of contempt, and to serve at a deterrent to other bad actors. Because Defendants engaged in willful counterfeiting, the Court is empowered to award up to $2 million in statutory damages. Short of that, the Court should minimally award treble damages ($172,200) and award Clean Safety recovery of all of its attorneys' fees and costs, whereupon Clean Safety will promptly supply a Declaration as to the exact amount and supporting invoices (in excess of $265,000).

#### 1.    Defendants' Profits

Clean Safety is entitled to recover Defendants' profits pursuant to 15 U.S.C. § 1117(a), which provides that "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. . . .If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." Furthermore, because Defendants sold counterfeit gloves under Clean Safety's registered trademark, Section 1117(b)(2) provides that any profits or damages recovery shall be trebled.

In terms of assessing the amount of profits, a "plaintiff is entitled to recover a defaulting defendant's proven gross revenue with no reductions for expenses." *Hilton v. Int'l Perfume Palace, Inc.*, No. CV-5074 (JFB) (GRB), 2013 U.S. Dist. LEXIS 150278, at *14 (E.D.N.Y. Sept. 2, 3013) (citing *Harris v. Fairweather*, No. 11-Civ.-2152, U.S. Dist. LEXIS 151696, at *5 (S.D.N.Y. Oct. 19, 2012) (cleaned up) (awarding defendants' revenue on default judgment where defendant did not prove elements of cost or deductions). "Any doubts about the actual amount of profits are resolved against the infringer." *Medline Indus. v. 9121-3140 Que., Inc.*, No. 1:09-cv-301-JL, 2010 U.S. Dist. LEXIS 19945, at *14 (D.N.H. Mar. 5, 2010) (awarding defendant's revenue on default judgment reasoning that "[i]f the infringer provides no evidence from which the court can determine the amount of

1    any cost deductions, there is no obligation for the court to make an estimate") (citing

2    THOMAS MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 30:66 4th ed. 1994 &

3    Supp. 2009).

4         In this case, Clean Safety has provided evidence of at least two sales of Counterfeit

5    Gloves made by Defendants: (1) 450 boxes to Thigo International at $12.00 per box, for a

6    total    of    $5,400    (Thigo    Decl.    ¶    4);    and    (2)    4000    boxes    to

7    SY America Group at $12.50 per box, for a total of $52,000. (Koley Decl. ¶ 17.)

8    Defendants have provided no evidence of costs or deductions in this case. (Koley Decl. ¶

9    16.) Thus, it is fair to conclude that Defendants' profits amounted to no less than $57,400.

10   *See Hilton*, 2013 U.S. Dist. LEXIS 150278, at *5; *Medline*, 2010 U.S. Dist. LEXIS 19945,

11   at *14. Accordingly, the Court should award Clean Safety $57,400 in Defendants' profits,

12   trebled to $172,200 pursuant to 15 U.S.C. § 1117(b)(2).

13        Moreover, it is clear from the evidence gathered to-date that Defendants earned

14   revenue far in excess of the $57,400 identified. In particular, Jiang's customer of

15   Counterfeit Gloves, Thigo International, knew of Jiang because he was "well known in the

16   local Wechat community as a seller of PPE and promoted himself as such." (Thigo Decl.

17   ¶ 3.) Further, SY America indicated that it met Jiang after he solicited SY America to

18   purchase PPE. (Koley Decl. ¶ 17.) Jiang informally rented space in SY America's

19   warehouse to store PPE that he was selling. (*Id*. ¶17.) Notably, despite both Defendants'

20   persistent denials of involvement selling PPE, (*see* Koley Decl., ¶¶ 11-12, Exs. C, D),

21   Jiang's Linkedin page indicates he is the manager at "Ruby Truck Line" and includes

22   several pages worth of Jiang's correspondence with several people seeking PPE in large

23   quantities. (See Koley Decl. ¶2, Ex. A.) It has been Defendants' contempt and bad faith

24   refusal to provide discovery that has prevented Clean Safety from learning the true extent

25   of counterfeiting revenue. Thus, the Court is amply justified in awarding at least the

26   $57,400 figure as a highly conservative measure of damages.

27             **2.    Attorneys' Fees**

28        Clean Safety seeks its fees based not only on Defendants' unlawful counterfeiting

-18-

activities, but also on Defendants' litigation misconduct and contempt of these proceedings, which have wasted the time and effort not only of Clean Safety, but also that of the Court, and even the mediator (who presided over a pointless proceeding). 15 U.S.C. § 1117(b)(2) provides that in cases of counterfeiting of registered trademarks, the court shall award the plaintiff's attorneys' fees. Clean Safety therefore respectfully requests recovery of all of its attorneys' fees incurred in this case. If the Court grants the present Motion, Clean Safety will promptly file a Declaration detailing the amount of fees and providing the supporting invoices.

Although Section 1117(b)(2) provides for an award of fees for counterfeiting, and the Court need look no further than that statute to authorize a fee award, Clean Safety notes that a fee award would be independently justified (1) under 15 U.S.C. § 1117(a), in view of the exceptionality of the present case, both due to Defendants' acts of counterfeiting, and their litigation misconduct, (2) pursuant to Federal Rule of Civil Procedure 37, in view of Defendants' discovery misconduct, and (3) pursuant to the Court's inherent powers, in view of Defendants' litigation misconduct and contempt.

Section 1117(a) provides that the court "in exceptional cases may award reasonable attorney fees to the prevailing party." As explained by the Supreme Court in *Octane Fitness, LLC v. ICON Health & Fitness, Inc*., 572 U.S. 545, 554 (2014), "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." The Supreme Court further identified a non-exclusive list of factors for consideration, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6. Furthermore, fees may be awarded in cases where "a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so

-19-

'exceptional' as to justify an award of fees." *Id.* at 555. The Ninth Circuit in *Sunearth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016), confirmed that "district courts analyzing a request for fees under the Lanham Act should examine the 'totality of the circumstances' to determine if the case was exceptional, [] exercising equitable discretion in light of the nonexclusive factors identified in *Octane Fitness* and *Fogerty*, and using a preponderance of the evidence standard."

Here, it is unquestionable that this was an exceptional case within the meaning of § 1117(a) and *Octane Fitness*. Defendants are counterfeiters who took advantage of the unprecedented public health crisis of the pandemic to profit from sales of fake personal protective medical equipment. When sent a cease and desist letter, they persisted. After being sued, they only begrudgingly appeared in the case, and then ultimately ceased litigating, in defiance of the Federal Rules of Civil Procedure, and in contempt of this Court's orders. Defendants have also wasted a Court-ordered mediation proceeding, with Ruby Trucking failing to attend, and Jiang first seeming to agree to a settlement, then reneging and becoming unreachable.

Defendants' misconduct has resulted in fake medical product being distributed, brand injury to Clean Safety, and wasted time and effort of all involved in this litigation. Furthermore, *Octane Fitness* recognizes the important role that fee awards have in deterrence. 572 U.S. at 554 n.6. The Court should consider what message it may want to send here. Can a counterfeiter of medical equipment engage in willful misconduct, and then when called to court, disregard the litigation process and walk away from it, leaving the plaintiff to foot the bill? Certainly not. An award of all of Clean Safety's fees in this case will stand as an important deterrent to any like-minded counterfeiters, particularly those seeking to take advantage of the pandemic for improper personal gain.

Although Local Rule 55-3 provides for calculating fees as a percentage of the judgment amount, Defendants preluded full discovery as to damages, and as applied only to the limited sales Clean Safety did discover, the calculation yields a very low figure. However, the Local Rule also allows the prevailing party to petition the court to award full

-20-

4879-8324-6908.5

attorneys' fees, and Clean Safety does so here. For all the reasons discussed supra, full compensation to Clean Safety is warranted.

### 3.    Costs

A plaintiff is entitled to recover "costs of the action" in trademark infringement actions. 15 U.S.C. § 1117(a)(3). Based upon Defendants' conduct in this case and the willful nature of those actions, Clean Safety is entitled to recover its costs and can supply an appropriate bill of costs following entry of default judgment pursuant to C.D. L.R. 54-3. *See Coach*, 2011 U.S. Dist. LEXIS 52482 at *18.

### B.    Injunctive Relief

Clean Safety is entitled to a permanent injunction to prevent repetition of the now-admitted acts of infringement and unfair competition alleged in the FAC.  A permanent injunction is an appropriate remedy in a default judgment case involving trademark infringement and unfair competition.  *See, e.g., Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180-81 (9th Cir. 1988) (stating "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement"); *Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) (granting a permanent injunction as part of default judgment where the defendant's past behavior and on-going ability to infringe the plaintiff's copyright constituted a continued threat of future infringing activity and the defendant's lack of participation in the litigation gave the court no assurance that the infringing activity would cease).

As discussed in *Forged Threadworks,* 2015 U.S. Dist. LEXIS 71332 at *13-14, a permanent injunction is proper where a plaintiff shows: (a) irreparable harm, (b) the inadequacy of monetary damages; (c) that the balance of hardships favors plaintiff; and (d) that an injunction would benefit the public interest. The inability of a trademark owner to control its reputation creates irreparable harm. *CytoSport, Inc. v. Vital Pharma*., Inc., 617 F. Supp. 2d 1051, 1066 n.1, 1080 (E.D. Cal. 2009) (granting motion for preliminary injunction prohibiting competitor from marketing, selling, advertising, or promoting liquid

protein-based nutritional supplement using trademark confusingly similar to owner's MUSCLE MILK trademark). Similarly, the Ninth Circuit has explained that "jeopardy to a company's competitive position" caused by copyright infringement satisfies the irreparable harm requirement. *Apple Computer, Inc. v. Formula Int'l Inc.*, 725 F.2d 521, 525-26 (9th Cir. 1984).

The threat of the loss of prospective customers, goodwill, or reputation also supports a finding of irreparable harm. *See, e.g., Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001). These intangible injuries are irreparable, because quantifying their harm is impractical, and such injuries cannot be fully remedied with a financial award. *MySpace, Inc. v. Wallace*, 498 F. Supp. 2d 1293, 1305 (C.D. Cal. 2007). While a defendant may be harmed by an injunction because it will have to create new designations for any infringing products, the balance of hardships nevertheless tips in a plaintiff's favor because it is likely to incur irreparable harm if the defendant is allowed to continue to use its marks. The avoidance of such harm to Clean Safety's marks is moreover in the public interest and consistent with the Ninth Circuit's policy of deterring trademark infringement, as discussed *supra*.

In this case, all of these factors are met.  The sales of Counterfeit Gloves bear the CLEAN SAFETY mark and damage Clean Safety's reputation and goodwill, especially since there is no way to regulate the composition or quality of the Counterfeit Gloves.  For example, the authentic Clean Safety Blue Nitrile Gloves are made out of nitrile and meet the strict FDA standards in quality, composition, strength, and thickness, for example, that are associated with FDA certification numbers.  Counterfeiters of PPE gloves may sell lower quality vinyl gloves marketed as nitrile that do not meet the strict testing standards in composition and quality that are associated with Clean Safety authentic Blue Nitrile Gloves.  The balance of hardships favors Clean Safety because Defendants can stop selling the Counterfeit Gloves and sell other types of gloves without the CLEAN SAFETY mark, whereas without an injunction, the irreparable injury to Clean Safety continues.

As the Court stated in Coach:

A permanent injunction based upon a trademark infringement action is appropriate where it is not "absolutely clear" that a defendant's infringing activities have ceased and will not begin again. *PepsiCo, Inc*., 238 F. Supp. 2d at 1177-78 (granting permanent injunction despite limited evidence from plaintiff regarding the risk of future infringement by the defendant). As discussed above, Plaintiff has established that it is entitled to judgment on its trademark infringement claim. Given Defendants' failure to defend against this lawsuit and Plaintiff's evidence that Defendants' infringement … continued even after the filing of this lawsuit, … there is no indication that Defendants have or will terminate their infringing activities. Accordingly, the Court permanently enjoins Defendants from using Plaintiff's marks in connection with the sale and offer for sale of infringing products.

A similar conclusion should be reached in this case.

## VI.    **CONCLUSION**

For each and all of the foregoing reasons, Clean Safety respectfully requests that default judgment be entered against Defendants.  A proposed form of judgment has been filed herewith.

DATED:  December 14, 2022        **FOLEY & LARDNER LLP**
                                 Victor de Gyarfas
                                 Jianing G. Yu
                                 Mikle S. Jew
                                 Ashley M. Koley


                                 /s/ Victor de Gyarfas
                                 Victor de Gyarfas
                                 Attorneys for Plaintiff CLEAN SAFETY, INC.

-23-