1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLEAN SAFETY, INC., a California corporation,<br><br>        Plaintiff,<br><br>   v.<br><br>RUBY TRUCKING LLC, a California limited liability company, and LEI JIANG, an individual,<br><br>        Defendants. | Case No. 5:21-cv-00225-JWH-SPx<br><br>**ORDER REGARDING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [ECF No. 122]** |

Before the Court is the motion of Plaintiff Clean Safety, Inc. for default judgment.[1]  The Court finds this matter appropriate for resolution without a hearing.  *See* Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed in support,[2] the Court orders that the Motion is **GRANTED in part** and **DENIED in part**, as set forth herein.

# I.  BACKGROUND

## A.    Facts

Clean Safety alleges the following facts:

Clean Safety, a California corporation, imports and sells authentic Clean Safety-branded blue nitrile gloves that are frequently used in circumstances requiring the use of personal protective equipment ("PPE").[3]  Clean Safety is the owner of U.S. Trademark Reg. No. 4,459,128 for the CLEAN SAFETY mark.[4]  Defendant Ruby Trucking LLC is a California limited liability company with its principal place of business in California.  Defendant Lei Jiang is an individual who uses the same address as Ruby Trucking.[5]

Defendants marketed and distributed a counterfeit version of Clean Safety's packaging for blue nitrile gloves, bearing the CLEAN SAFETY mark (the "Counterfeit Gloves").[6]  Defendants deceived potential consumers into believing that the Counterfeit Gloves are authentic Clean Safety blue nitrile gloves.[7]  Jiang offered the Counterfeit Gloves for sale on social media, and he

---

[1]    Pl.'s Mot. for Default J. (the "Motion") [ECF No. 122].

[2]    The Court considered the documents of record in this action, including the following papers:  (1) First Amended Compl. (the "Amended Complaint") [ECF No. 25]; and (2) Motion (including its attachments).

[3]    Motion 2:8-10; Amended Complaint ¶ 3 & 9.

[4]    Motion 2:12-13; Amended Complaint ¶ 19.

[5]    Amended Complaint ¶¶ 4-5.

[6]    Motion 2:14-16; Amended Complaint ¶¶ 10-13.

[7]    Motion 2:16-19; Amended Complaint ¶ 12.

listed Ruby Trucking's address as the location where the Counterfeit Gloves
could be purchased.[8]

**B.    Procedural Posture**

Clean Safety filed a Complaint against Defendants in February 2021,
asserting three claims for relief:  trademark infringement, federal unfair
competition, and unfair competition under California Business and Professions
Code § 17200.[9]  Clean Safety filed the instant Motion in December 2022, and it
is unopposed.

## II.  LEGAL STANDARD

Pursuant to Rule 55(b) of the Federal Rules of Civil Procedure, a court
may order default judgment following the entry of default by the Clerk of the
Court.  This Court's Local Rules require an applicant for default judgment to
provide a declaration that conforms to the requirements of Rule 55(b) and sets
forth the following information:

(1) when and against which party the default was entered;

(2) the identification of the pleading to which default was entered;

(3) whether the defaulting party is an infant or incompetent person,
and if so, whether that person is represented by a general guardian,
committee, conservator or other representative;

(4) that the Servicemembers Civil Relief Act (50 U.S.C. App. § 521)
does not apply; and

(5) that notice of the application has been served on the defaulting
party, if required by F. R. Civ. P. 55(b)(2).

L.R. 55-1.

---

[8]     Motion 2:28-3:2; Amended Complaint ¶ 13.
[9]     Amended Complaint ¶¶ 18-36.

Whether to enter default judgment is within the sound discretion of the district court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092-93 (9th Cir. 1980). In *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986), the Ninth Circuit set forth the following factors for consideration in determining whether to grant default judgment:

(1) the possibility of prejudice to the plaintiff;

(2) the merits of plaintiff's substantive claim;

(3) the sufficiency of the complaint;

(4) the sum of money at stake in the action;

(5) the possibility of a dispute concerning material facts;

(6) whether the default was due to excusable neglect; and

(7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471-72 ("*Eitel* factors"). Upon the entry of default, the well-pleaded factual allegations of a complaint are deemed true; however, allegations pertaining to the amount of damages must be proven. *See TeleVideo Systems Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987). A plaintiff is required to provide evidence of his damages, and a court may rely on only the declarations submitted by the plaintiff or may order a full evidentiary hearing. *See* Fed. R. Civ. P. 55(b)(2). Further, the damages sought must not "differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

## III. DISCUSSION

Clean Safety seeks default judgment against Defendants in the amount of $172,000 in statutory damages and all of its attorney's fees and costs, which it predicts will be in excess of $265,000.[10] In order for default judgment to be

---

[10]    Motion 17:6-9.

-4-

entered in its favor, Clean Safety must meet the procedural requirements
described above and must establish that, on balance, the *Eitel* factors weigh in its
favor. The Court evaluates these factors below.

**A.    Procedural Requirements**

Clean Safety has satisfied the procedural requirements for the entry of
default judgment by the Court. Pursuant to Rule 55, Clean Safety did not
petition for entry of default judgment until after default was entered against
Defendants by the Clerk.[11] Additionally, Clean Safety's Motion sets forth the
information required by the Local Rules of this Court.[12]

**B.    The *Eitel* Factors**

**1.    Possibility of Prejudice to Plaintiff**

Clean Safety would suffer prejudice if the Court does not enter default
judgment. Although Defendants initially appeared in this action,[13] Defendants
have failed to continue to participate.[14] Absent a default judgment by this Court,
Defendants will have avoided liability simply by not responding to Clean
Safety's pleading. Therefore, this factor weighs in favor of default judgment.
*See Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014) (finding
that the plaintiff would suffer prejudice absent the entry of default judgment
because of the defendant's unwillingness to cooperate and defend against
claim); *Elektra Ent. Grp. Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005)
(finding that, absent the entry of default judgment, the plaintiff "would be

---

[11]    *Id.* at 5:27-28, 17:6-9; *see* Default by Clerk as to Lei Jiang [ECF No. 114];
Default by Clerk as to Ruby Trucking LLC [ECF No. 119].

[12]    Motion 20:25-21:2 & 21:5-8.

[13]    *See* Notice Filed by Def. Ruby Trucking LLC ("Ruby Trucking's
Request") [ECF No. 123] 3:13-17; Ord. by Judge Holcomb (the "Order") [ECF
No. 124].

[14]    *See, e.g.*, Motion 5:2-4, 21-24, 6:9, 9:27-10:5, & 16:6-13; Mediation Rep.
Filed by Mediator (ADR Panel) David Grace (the "Mediation Report") [ECF
No. 76]; Min. Ord. of Video Hr'g [ECF No. 110]; Ord. by Judge Holcomb [ECF
No. 116]; Order.

denied the right to judicial resolution of the claims presented" against the defendant).

### 2.    Substantive Merits of Plaintiff's Claims

The second and third *Eitel* factors concern the merits of Clean Safety's substantive claims and the sufficiency of the complaint.  *See Eitel*, 782 F.2d at 1471-72.  "The Ninth Circuit has suggested that these two factors require that a plaintiff 'state a claim on which the [plaintiff] may recover.'"  *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172 (C.D. Cal. 2002) (citation omitted).  As discussed below, Clean Safety's claims are substantive and sufficiently stated, and they are therefore meritorious.  The second and third *Eitel* factors thus favor the entry of default judgment with respect to Clean Safety's claims.

### a.    Federal Trademark Infringement

Any person who, without the consent of the registrant, uses any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, mistake, or deception, shall be liable in a civil action by the registrant.

15 U.S.C. § 1114(1)(a).

Clean Safety avers that Defendants adopted and used in commerce Clean Safety's federally registered mark, and marks confusingly similar thereto, with knowledge of Clean Safety's superior rights and with knowledge that their infringing use of the CLEAN SAFETY mark was intended to cause confusion, mistake, and/or deception.[15]  According to Clean Safety, Defendants have offered their goods and services under the infringing mark in the same channels

---

[15]    Amended Complaint ¶ 22.

-6-

1    of trade as those in which Clean Safety's legitimate goods are offered.[16]

2    Moreover, Clean Safety alleges that Defendants' infringing use of Clean

3    Safety's name and mark in connection with the sale and distribution of

4    Counterfeit Gloves is likely to cause, and has caused, confusion, mistake, and/or

5    deception as to the affiliation, connection, or association with Clean Safety, in

6    violation of 15 U.S.C. § 1114(a)(1).[17]    Clean Safety claims that Defendants'

7    actions constitute knowing, deliberate, and willful infringement of Clean

8    Safety's federally registered mark.

9        Clean Safety supports its allegations with evidence, including the

10   following:

11   • photographs comparing Clean Safety's blue nitrile gloves and packaging

12     with Defendants' Counterfeit Gloves—purchased from non-parties

13     Thigo International, Inc. ("Thigo International") and SY America Group

14     ("SY America")—that reveal substantial similarities between both

15     products;[18]

16   • a copy of Jiang's LinkedIn Profile in which Jiang indicates that he is the

17     manager at "Ruby Truck Line" and that includes Jiang's correspondence

18     with several people seeking PPE in large quantities;[19]

19   • an order by Thigo International for the purchase of the Counterfeit

20     Gloves;[20]

---

16    *Id.* at ¶ 23.

17    *Id.* at ¶ 24.

18    *Id.* at ¶¶ 9-11; Motion 6:28-8:12; Decl. of Ashley M. Koley (the "Koley
Declaration") [ECF No. 122-1] ¶ 19.

19    Koley Declaration ¶ 2; Motion, Ex. A [ECF No. 122-2].

20    Koley Declaration ¶ 13; Motion, Ex. E [ECF No. 122-6]; Decl. of Edwin
Wai (the "Thigo Declaration") [ECF No. 122-8] ¶ 4.

- a copy of two checks issued by Ruby Trucking and signed by what appears to be Bin Jiang's name;[21] and

- a declaratory statement from Clean Safety's counsel regarding a sale of Counterfeit Gloves made by Defendants to SY America.[22]

Clean Safety avers that the knowing and intentional nature of Defendants' acts renders this an exceptional case, thereby entitling Clean Safety to recovery of Defendants' profits, any damages sustained by the Clean Safety, and the costs of the action.[23]  *See* 15 U.S.C. § 1117(a).

### b.    Federal Unfair Competition

The Lanham Act provides in relevant part that:

(1) [a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who

---

[21]    Koley Declaration ¶ 14; Motion, Ex. F [ECF No. 122-7].

[22]    Koley Declaration ¶ 17.

[23]    Amended Complaint ¶ 25.

1  believes that he or she is or is likely to be damaged by such

2  act.[24]

3  15 U.S.C. § 1125(a).

4       Clean Safety contends that, without authorization from Clean Safety,

5  Defendants have willfully sold Counterfeit Gloves and that Clean Safety has

6  been, and will continue to be, seriously and irreparably damaged unless

7  Defendants are preliminarily and permanently enjoined from selling and

8  advertising their Counterfeit Gloves.[25]  Additionally, Clean Safety states that by

9  reason of Defendants' actions, Defendants have unlawfully profited and Clean

10  Safety has been damaged.[26]  As described above, Clean Safety has produced

11  evidence supporting these allegations.[27]  Clean Safety maintains that it is entitled

12  to Defendants' profits and to recover its damages, its attorney's fees and costs,

13  and disbursements incident to its claim of statutory unfair competition.[28]

14      **c.**    **Unfair Competition under California Law**

15       Under California Law, unfair competition is defined as "any unlawful,

16  unfair or fraudulent business act or practice and unfair, deceptive, untrue or

17  misleading advertising."  Cal. Bus. & Prof. Code § 17200.

18       Clean Safety alleges that Defendants have marketed and distributed in

19  interstate commerce a counterfeit version of Clean Safety's packaging for blue

20  nitrile gloves, bearing the CLEAN SAFETY mark.[29]  Clean Safety also

21  represents that Defendants have deliberately deceived and created a false

22  impression among a substantial segment of potential consumers that the

23

24  [24]    *Id.* at ¶ 28.

25  [25]    *Id.* at ¶¶ 29 & 30.

    [26]    *Id.* at ¶ 30.

26  [27]    *See* Amended Complaint ¶¶ 9-11; Motion 6:28-8:12; Motion, Exs. A, E, & F; Koley Declaration ¶¶ 2, 13, 14, 17, & 19; Thigo Declaration ¶ 4.

27  [28]    Amended Complaint ¶ 31.

28  [29]    *Id.* at ¶¶ 10-13.

Counterfeit Gloves are authentic Clean Safety blue nitrile gloves sponsored or approved by Clean Safety.[30]  As described above, Clean Safety has produced evidence supporting these allegations.[31]

Clean Safety claims that Defendants' deception is material because it will likely influence potential consumers' purchasing decisions.[32]  Clean Safety argues that consumers have been injured by purchasing what they believe are Clean Safety's gloves, when in fact they have purchased Defendants' Counterfeit Gloves.[33]  Clean Safety contends, therefore, that Defendants' conduct constitutes unfair competition under Cal. Bus. & Prof. Code § 17200 in addition to counterfeiting and infringement under 15 U.S.C. §§ 1114(1)(a) and 1125(a).[34]

### 3.   Sum of Money at Stake

The fourth *Eitel* factor examines the amount of money at stake in the action relative to the gravity of the defendant's conduct.  *See PepsiCo*, 238 F. Supp. 2d at 1176.  Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct.  *See Seiko Epson Corp. v. Benedychuk*, 2021 WL 2786663, at *4 (C.D. Cal. Jan. 27, 2021) (quotations and citation omitted).  Here, Clean Safety seeks $172,000 in statutory damages, as well as attorney's fees and costs that Clean Safety predicts will be in excess of $265,000.[35]

As discussed below, Clean Safety's papers substantiate the request for statutory damages with sufficient facts and calculations, and the Court thereby

---

[30]   *Id.* at ¶ 12.

[31]   *See id.* at ¶¶ 9-11; Motion 6:28-8:12; Motion, Exs. A, E, & F; Koley Declaration ¶¶ 2, 13, 14, 17, & 19; Thigo Declaration ¶ 4.

[32]   *Id.* at ¶ 12.

[33]   *Id.* at ¶ 15.

[34]   *Id.* at ¶¶ 22, 23, 29, & 33.

[35]   Motion 17:6-9.

finds that this factor weighs in favor of granting this portion of the Motion. However, because Clean Safety has not produced evidence demonstrating Clean Safety's attorney's fees and costs, this factor weighs against granting that portion of the Motion.

### 4. Possibility of Dispute Concerning Material Facts

Upon the entry of default, all well-pleaded factual allegations are deemed true—except those pertaining to damages. *See TeleVideo*, 826 F.2d at 917; *Elektra Ent. Grp. Inc.*, 226 F.R.D. at 393 ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists.").

Here, Defendants have ceased to appear in this action and have not asserted any defenses. Specifically, Jiang did not file an opposition, nor otherwise respond, to the motion for summary judgment. Moreover, although Ruby Trucking filed a notice requesting to set aside the default judgment, Ruby Trucking failed to obtain new counsel to continue the litigation process in a timely manner as it claimed it would, despite the Court's having moved the hearing on the motion for default judgment by nearly two months to accommodate Ruby Trucking.[36] Ruby Trucking subsequently ceased to communicate with Clean Safety and the Court altogether. It is therefore unlikely that disputes will arise regarding the material facts. Accordingly, this factor favors default judgment.

### 5. Whether Default Was Due to Excusable Neglect

Under the sixth factor, the court must consider whether a defendant's default may have been due to excusable neglect. *See Eitel*, 782 F.2d at 1472. This factor favors default judgment where the defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the action.

---

[36]    *See* Ruby Trucking's Request 3:13-17; Order.

-11-

*See Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. Jan 23, 2012).

Here, Clean Safety properly served Defendants with the Summons, Complaint, Amended Complaint, and the instant Motion.[37]  Defendants have had ample time to appear in this action, and, although they appeared initially, they have failed to continue to do so.[38]  Accordingly, the Court concludes that Defendants' defaults were not the product of excusable neglect.  This factor thus favors the entry of a default judgment.

### 6.    Policy Favoring Decision on the Merits

Generally, default judgments are disfavored because "[c]ases should be decided upon their merits whenever reasonably possible."  *Eitel*, 782 F.2d at 1472 (citing *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985)).  However, where a defendant fails to appear and respond, default judgment is appropriate.  *See Wecosign*, 845 F. Supp. 2d at 1083.  Here, Defendants' failure to appear or defend against this action makes a decision on the merits impracticable.  Therefore, this factor weighs in favor of default judgment.

On balance, the *Eitel* factors weigh in favor of default judgment against Defendants.  Thus, the Court **GRANTS** the Motion with respect to the entry of default judgment in Clean Safety's favor.

## C.    Requested Relief

The Federal Rules provide that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

---

[37]     *See, e.g.*, Proof of Service [ECF No. 16]; Proof of Service [ECF No. 28]; Proof of Service [ECF No. 129]; Ruby Trucking's Request.

[38]     *See* Ruby Trucking's Request 3:13-17; *see, e.g.*, Motion 5:2-4, 5:21-24, 6:9, 9:27-10:5, & 16:6-13; Mediation Report; Min. Ord. of Video Hr'g; Ord. by Judge Holcomb [ECF No. 116]; Order.

1  Fed. R. Civ. P. 54(c). A plaintiff must "prove up" the amount of damages. *See*

2  *Aifang v. Velocity VIII, L.P.*, 2016 WL 5420641, at *7 (C.D. Cal. Sept. 26, 2016).

3       Here, Clean Safety seeks $172,000 in statutory damages, as well as

4  attorney's fees and costs—which Clean Safety predicts will be in excess of

5  $265,000.[39]  Additionally, Clean Safety seeks a permanent injunction against

6  Defendants, enjoining them from using the name "Clean Safety," or any name

7  confusingly similar thereto, in connection with the distribution, sale, marketing,

8  advertising, or promotion in the United States of personal protective equipment,

9  medical products, gloves, or any of the categories of goods or services identified

10  in the CLEAN SAFETY trademark registration, as well as from inducing or

11  encouraging anyone else to engage in such conduct.[40]  The requested relief does

12  not differ in kind from, nor exceed in amount, what Clean Safety demands in its

13  Complaint.[41]  However, as discussed below, although Clean Safety has provided

14  sufficient evidence supporting its requested total in statutory damages and need

15  for injunctive relief, it has not done so with regard to its requested total in

16  attorney's fees and costs.

17       **1.    Statutory Damages**

18       Clean Safety is entitled to recover Defendants' profits pursuant to the

19  Lanham Act, which provides that:

20       [i]n assessing profits the plaintiff shall be required to prove

21       defendant's sales only; defendant must prove all elements of cost or

22       deduction claimed. . . .  If the court shall find that the amount of the

23       recovery based on profits is either inadequate or excessive the court

24

25

---

26  [39]    Motion 17:6-9.

27  [40]    Proposed Default J. [ECF No. 122-11] 1:23-2:1; *see* Amended Complaint
     8:21-9:4.

28  [41]    *See* Amended Complaint 8:6-9:26.

-13-

may in its discretion enter judgment for such sum as the court shall
find to be just, according to the circumstances of the case.[42]
15 U.S.C. § 1117(a).  Furthermore, because Defendants sold counterfeit gloves
under Clean Safety's registered trademark, any profits or damages recovery
shall be trebled.[43]  *See* 15 U.S.C. § 1117(b)(2).

In the instant case, Clean Safety has provided evidence of at least two
sales of Counterfeit Gloves made by Defendants:  (1) 450 boxes to Thigo
International at $12.00 per box, for a total of $5,400;[44] and (2) 4,000 boxes to
SY America at $12.50 per box, for a total of $52,000.[45]  Defendants have
provided no evidence of costs or deductions in this case.[46]  Thus, it is fair and
appropriate to conclude that Defendants' profits amounted to no less than
$57,400.[47]  *See Medline Indus., Inc. v. 9121-3140 Quebec, Inc.*, 2010 WL 840196,
at *5 (D.N.H. Mar. 5, 2010) (citation omitted).

Moreover, it is clear from the evidence gathered to date that Defendants
likely earned revenue in excess of the $57,400 identified.  In particular, Thigo
International, to whom Jiang sold Counterfeit Gloves, knew of Jiang because he
was well known in the local WeChat instant messaging, social media, and mobile
payment application community as a seller of PPE, and he promoted himself as
such.[48]  Further, SY America indicated that it met Jiang after he solicited SY
America to purchase PPE.[49]  Jiang informally rented space in SY America's

---

[42]    Motion 17:11-16.
[43]    *Id.* at 17:16-18.
[44]    Thigo Declaration ¶ 4.
[45]    Koley Declaration ¶ 17.
[46]    *Id.* at ¶ 16.
[47]    Motion 18:9-11.
[48]    *See* Thigo Declaration ¶ 3.
[49]    Koley Declaration ¶ 17.

1  warehouse to store the PPE that he was selling.[50]  Notably, despite both

2  Defendants' denials of involvement in selling PPE,[51] Jiang's LinkedIn page

3  indicates that he is the manager at "Ruby Truck Line" and includes Jiang's

4  correspondence with several people seeking PPE in large quantities.[52]

5  Defendants' failure to engage in the discovery process has prevented Clean

6  Safety from learning the true extent of counterfeiting revenue.  Thus, the Court

7  is justified in awarding $57,400 as a conservative measure of damages.

8          Accordingly, the Court **GRANTS** the Motion with respect to Clean

9  Safety's request for statutory damages and concludes that Clean Safety is

10 entitled to $57,400 in Defendants' profits, trebled to $172,200 pursuant to 15

11 U.S.C. § 1117(b)(2).[53]

12        **2.    Attorney's Fees and Costs**

13        In cases of counterfeiting of registered trademarks, the court shall award

14 the plaintiff's attorney's fees.[54]  *See* 15 U.S.C. § 1117(b)(2).  Moreover, a

15 plaintiff is entitled to recover costs of the action in trademark infringement

16 actions.[55]  *See* 15 U.S.C. § 1117(a)(3).  Additionally, pursuant to this Court's

17 Local Rules, because of Defendants' conduct in this case and the willful nature

18 of their actions, Clean Safety is entitled to recover its costs if it provides an

19 appropriate bill of costs following an entry of default judgment.[56]  *See* L.R. 54-3;

20 *Coach Servs., Inc. v. YNM, Inc.*, 2011 WL 1752091, at *6 (C.D. Cal. May 6, 2011).

21        Clean Safety requests the recovery of all of its attorney's fees and costs

22 incurred in this case, which it predicts will be in excess of $265,000, and it has

---

[50]    *Id.*

[51]    Motion, Ex. C 3:5-11; Motion, Ex. D 3:4-10.

[52]    *See* Motion, Ex. A.

[53]    Motion at 18:11-12.

[54]    *Id.* at 19:3-5.

[55]    *Id.* at 21:4-5.

[56]    *Id.* at 21:5-8.

stated that it will promptly file a Declaration detailing the amount of fees and
providing the supporting invoices if the Court grants the present Motion.[57]
However, since Clean Safety has not yet provided any invoices or other evidence
supporting its assertion that Clean Safety has incurred attorney's fees and costs
in excess of $265,000, nor has it produced an exact calculation of the total
amount of attorney's fees and costs incurred throughout the course of this
litigation, the Court finds that it would be premature to grant Clean Safety its
requested attorney's fees and costs at this time.  The Court thereby **DENIES**
the Motion with respect to Clean Safety's request for attorney's fees and costs,
with leave for Clean Safety to file a motion to amend the Judgment, including a
declaration producing evidence supporting this portion of its request.

### 3.    Injunctive Relief

A permanent injunction is an appropriate remedy in a default judgment
case involving trademark infringement and unfair competition.[58]  *See, e.g.*,
*Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180-81 (9th Cir. 1988)
("[i]njunctive relief is the remedy of choice for trademark and unfair
competition cases, since there is no adequate remedy at law for the injury caused
by a defendant's continuing infringement"); *Jackson v. Sturkie*, 255 F. Supp. 2d
1096, 1103 (N.D. Cal. 2003) (granting a permanent injunction as part of a default
judgment where the defendant's past behavior and on-going ability to infringe
the plaintiff's copyright constituted a continued threat of future infringing
activity and the defendant's lack of participation in litigation gave the court no
assurance that the infringing activity would cease).

As discussed in *Forged Threadworks, Inc. v. Infidel Indus. LLC*, 2015 WL
11438100 (C.D. Cal. June 2, 2015), a permanent injunction is proper where a

---

[57]    *Id.* at 17:6-9.

[58]    *Id.* at 21:11-21.

plaintiff shows:  (a) irreparable harm, (b) the inadequacy of monetary damages; (c) that the balance of hardships favors plaintiff; and (d) that an injunction would benefit the public interest.[59]  *Id.* at *5.

The inability of a trademark owner to control its reputation creates irreparable harm.[60]  *See CytoSport, Inc. v. Vital Pharma., Inc.*, 617 F. Supp. 2d 1051, 1066 n.1, 1080 (E.D. Cal. 2009) (granting a motion for a preliminary injunction prohibiting a competitor from marketing, selling, advertising, or promoting a liquid protein-based nutritional supplement using a trademark confusingly similar to the owner's MUSCLE MILK trademark).  Similarly, the Ninth Circuit has explained that "jeopardy to a company's competitive position" caused by copyright infringement satisfies the irreparable harm requirement.[61]  *Apple Computer, Inc. v. Formula Int'l, Inc.*, 725 F.2d 521, 525-26 (9th Cir. 1984).

The loss of prospective customers, goodwill, or reputation likewise supports a finding of an inadequacy of monetary damages.[62]  *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001).  Such intangible injuries are irreparable because quantifying their harm is impractical, and such injuries cannot be fully remedied with a financial award.[63]  *See MySpace, Inc. v. Wallace*, 498 F. Supp. 2d 1293, 1305 (C.D. Cal. 2007).  With regard to the balance of hardships, Clean Safety asserts that while a defendant may be harmed by an injunction because it will have to create new designations for any infringing products, such a balancing test nevertheless normally weighs in a plaintiff's favor because the plaintiff is likely to incur irreparable harm if the

---

[59]    *Id.* at 21:22-26.
[60]    *Id.* at 21:25-26.
[61]    *Id.* at 22:2-5.
[62]    *Id.* at 22:6-7.
[63]    *Id.* at 22:8-10.

defendant is allowed to continue to use its marks.[64]  Finally, the avoidance of
such harm to Clean Safety's marks is in the public interest and is consistent with
the Ninth Circuit's policy of deterring the trademark infringement discussed
above.[65]

Further, all of the *Forged Threadworks* elements are met.[66]  Defendants'
sales of Counterfeit Gloves bear the CLEAN SAFETY mark and damage Clean
Safety's reputation and goodwill, since there is no way to regulate the
composition or quality of the Counterfeit Gloves.[67]  As Clean Safety points out,
authentic Clean Safety blue nitrile gloves are made out of nitrile and meet the
strict FDA standards in quality, composition, strength, and thickness, for
example, that are associated with FDA certification numbers.[68]  Counterfeiters
of PPE gloves, however, may sell lower quality vinyl gloves marketed as nitrile
that do not meet the strict testing standards in composition and quality that are
associated with Clean Safety authentic blue nitrile gloves.[69]  Finally, the balance
of hardships favors Clean Safety because Defendants can stop selling the
Counterfeit Gloves and sell other types of gloves without the CLEAN SAFETY
mark; however, without an injunction, the irreparable injury to Clean Safety
continues.[70]

Accordingly, the Court **GRANTS** the Motion with respect to Clean
Safety's request for a permanent injunction.

---

[64]    *Id.* at 22:11-14.
[65]    *Id.* at 22:14-16.
[66]    *Id.* at 22:17.
[67]    *Id.* at 22:17-19.
[68]    *Id.* at 22:19-22.
[69]    *Id.* at 22:22-25.
[70]    *Id.* at 22:25-27.

## IV.  DISPOSITION

Based on the foregoing, Clean Safety's Motion for default judgment is **GRANTED IN PART**.  Judgment shall be entered as follows:

1.    Clean Safety is **AWARDED** $172,200 in statutory damages.

2.    Clean Safety's request for attorney's fees and costs is **DENIED without prejudice**.

3.    Clean Safety's request for a permanent injunction is **GRANTED**.

4.    Clean Safety is **DIRECTED** forthwith to serve on Defendants a copy of this order and the Judgment entered substantially contemporaneously herewith.  Clean Safety is also **DIRECTED** to file proof of such service within seven days thereafter.

**IT IS SO ORDERED.**

Dated:    August 7, 2023

John W. Holcomb
UNITED STATES DISTRICT JUDGE